LOUGH ET AL., APPELLANTS, v. VARSITY BOWL, INC., ET AL., APPELLEES.

[Cite as Lough v. Varsity Bowl, Inc., 14 Ohio App. 2d 175.]

(No. 3163—Decided December 8, 1967.)

*Messrs. Brumbaugh, Corwin & McDonnell,* for appellants.

*Messrs. Shaman, Winer, Shulman & Ziegler,* for appellees.

KERNS, J. In the spring of 1964, the defendants, appellees herein, Harry Zavakos and Varsity Bowl, Inc., conducted a bowling tournament known as the Dayton Journal Herald National Industrial Bowling Tournament.

The plaintiffs, appellants herein, are members of the International Harvester Sheet Metal Team, captained by one James Lough, who entered the tournament by submitting an entry blank and fee to one Daniel Powers, an organizer and team sponsor, who was paid a bonus by the defendants for securing teams to participate in the tournament.

On March 28, 1964, the plaintiffs, as a team, bowled in

the tournament and upon completion of the tournament some time thereafter were found to be tied for first place and entitled to prize money in the amount of $11,250.

As permitted by the American Bowling Congress, the tournament rules required that each bowler must list, with his entry blank, any winnings of $200 or more in any previous tournament.

On June 18, 1964, the defendant Harry Zavakos notified plaintiffs that their team was disqualified from receiving any prize money because one of the team members, Jerry Shaffer, had failed to list previous winnings of more than $200.

In accordance with the rules of the American Bowling Congress, of which all of the participants in the tournament were members, the plaintiffs appealed from the order of disqualification, and a hearing was held before the executive committee of the Clark County Bowling Association.

At this hearing, the interested parties submitted oral testimony, and plaintiffs, through counsel, were given the right to present evidence and to cross-examine witnesses. The transcribed record of the hearing was then sent to the American Bowling Congress which upheld the decision of the defendant Harry Zavakos disqualifying the team. Thereupon, pursuant to American Bowling Congress rules, the plaintiffs requested reconsideration of the appeal, after which the order of disqualification was again upheld.

The evidence in support of the notice of disqualification, which is before this court by stipulation of the parties, is in direct conflict.

Lough, the team captain, testified that he gave the information concerning the previous prize winnings of Shaffer to Dan Powers, the team sponsor, and Powers testified that he presented affidavits with respect to past prize winnings of Shaffer and Lough to the tournament office of the defendant Mr. Zavakos in Dayton, Ohio. By contrast, Zavakos and his secretary testified that they did not receive the verification of Shaffer's previous prize winnings.

The plaintiffs filed the present action in the Court of Common Pleas of Montgomery County praying that "de-

fendants be perpetually enjoined from distributing the sum of $11,250 to any team other than the team comprised of the plaintiffs herein'' and ''that the court decree and order that the plaintiff team is entitled to the award amounting to $11,250 for tying for first place in the 1964 Dayton Journal Herald National Industrial Bowling Tournament.''

After the issues were drawn by answer and reply, the defendants moved for dismissal of the action, and the trial court thereafter entered the following judgment, which, in and of itself, illustrates the nature of the present controversy:

''Coming on further to be heard before the court on the motion of the defendents to dismiss plaintiffs' petition for the reason that this court has no jurisdiction of this action, the court finds that the action of the American Bowling Congress under the constitution, specifications and rules of the American Bowling Congress vests exclusive and final jurisdiction in such matters in the American Bowling Congress and, therefore, this court has no jurisdiction in this matter.''

In most respects, we agree with the analysis of this case by the trial court in its opinion, but the particular reference therein to the property rights of the plaintiffs is a source of concern.

The trial court, while recognizing the property rights of the plaintiffs, concluded that they must also show that the action of the American Bowling Congress was arbitrary or unreasonable before the courts would be justified in intervening in the internal affairs of the association.

Significantly, the property rights or pecuniary interests of the plaintiffs in this case are not held in common with other members of the American Bowling Congress. On the contrary, their rights are exclusive and their interests have little or no tangible relationship to their membership in the association.

In 5 Ohio Jurisprudence 2d 440, Section 7, the following rule is set forth:

''It is a well-established and uniform rule that courts of equity have no authority to interfere with the action of

voluntary and unincorporated associations *where no property right is involved. * * *"* (Emphasis ours.)

In the same negative vein, some courts in Ohio have also restricted the application of the general rule to those cases where no property rights are involved. See *Finley* v. *Duffy*, 88 Ohio App. 159; *Hennekes* v. *Maupin*, 119 Ohio App. 9. See, also, *Armstrong* v. *Duffy*, 90 Ohio App. 233.

We have been unable to find any reported case in Ohio where the specific issue presented herein has been resolved, but many jurisdictions other than Ohio have sanctioned judicial intervention to protect the proprietary interests of a member of a voluntary association, which are different in kind from the rights and interests of the membership at large. See 6 American Jurisprudence 2d 457, Section 30; 7 Corpus Juris Secundum 79, Section 34.

In 6 American Jurisprudence 2d 454, Section 28, the exception to the general rule is stated as follows:

"The general rule that courts will not intervene in the internal affairs of a voluntary association or club is subject to exception where the private rights of members are involved, it being generally recognized that judicial aid may be sought in case of actual or threatened invasion of the property or pecuniary rights of members. * * *

"* * *

"The compensatory remedies of a member against an association which denies him some property right to which he is entitled are the same as if he were entitled to the same right or property from a natural person or a private corporation which refused to concede it. If a member has become entitled to specific property, real or personal, his right thereto can be enforced against the association by replevin, ejectment, or any other appropriate action or proceeding. * * *."

In support of the contention that the trial court is without jurisdiction, the defendants have directed attention to American Bowling Congress Rule No. 329 which governs appeals from tournament decisions and states as follows:

"The decision of the congress shall be final and binding upon all entrants and officials of such tournament."

However, it is fundamental that the American Bowling Congress can neither enlarge nor restrict the jurisdiction of the Court of Common Pleas.

In the case of *Baltimore & Ohio Rd. Co. v. Stankard*, 56 Ohio St. 224, which has many characteristics similar to those of the present case, the court said, at page 232:

"Courts are created by virtue of the Constitution, and inhere in our body politic as a necessary part of our system of government, and it is not competent for any one, by contract or otherwise, to deprive himself of their protection. * * *"

In the case of *Myers v. Jenkins, Admr.*, 63 Ohio St. 101, the syllabus succinctly provides that "a contract in advance to renounce and waive one's right to appeal to the courts for the redress of wrongs is void and of no effect." See, also, *Zanesville Lodge, Loyal Order of Moose, v. Fluharty*, 8 Ohio App. 1; 51 A. L. R. 1421.

In the present case, the plaintiffs also contend that the action of the American Bowling Congress was arbitrary and unreasonable.

Although these adjectives are probably a little severe when applied to the present record, we do agree that the evidence upon which the ultimate determination was based is far from impressive. The legal committee of the American Bowling Congress did not see or hear the witnesses, and it is questionable, at least, whether the quantum and quality of the evidence which is now before this court by way of stipulation would meet the traditional requirements of a court of law.

The plaintiffs may not improve their position when the facts and circumstances of this case are fully and fairly explored in the courts, but, for the reasons set forth herein, we are of the opinion that their present property rights and pecuniary interests are a proper subject of judicial inquiry, and the cause will therefore be remanded to the trial court for further proceedings according to law.

*Judgment accordingly.*

CRAWFORD, P. J., and SHERER, J., concur.

180

(Decided January 17, 1968.)

ON APPLICATION for reconsideration.

*Per Curiam.* This cause is before the court upon the application of the defendants, appellees herein, for reconsideration of a decision rendered on December 8, 1967.

The motion apparently seeks some clarification of the language of the opinion which states that "the property rights or pecuniary interests of the plaintiffs in this case are not held in common with other members of the American Bowling Congress."

The evidence discloses that the defendants accepted the entry fee of the plaintiffs, observed them with some particularity as they bowled in the tournament, and took no affirmative steps to disqualify them until after they became entitled to prize money in the amount of $11,250. At that point, it is clear that the pecuniary interests of the plaintiffs were substantially different from those of the average card-carrying member of the American Bowling Congress.

The defendants further contend that they "stand to gain nothing in this matter irrespective of the finding and holding of the court." However, this observation does not affect the rights of the plaintiffs. The hearing before the Clark County Bowling Association has the usual characteristics of an adversary proceeding, and the defendants have displayed no lack of interest or enthusiasm in this appellate proceeding. It is also significant perhaps that the activities of the American Bowling Congress and local bowling establishments are interrelated and dependent to some extent upon a spirit of mutual co-operation.

The American Bowling Congress does not have final jurisdiction over the private rights and interests of its members, and a further examination of the record in this case serves to reassure us of the correctness and fairness of our original conclusion.

The motion will be overruled.

*Motion overruled.*

CRAWFORD, P. J., SHERER and KERNS, JJ., concur.