THE STATE EX REL. GOLDSBERRY, *v.* WEIR, DIRECTOR.

[Cite as State, ex rel. Goldsberry, v. Weir (1978), 60 Ohio App. 2d 149.]

(No. 77AP-578—Decided June 22, 1978.)

*Messrs. Stanhope, Holmes & Hirsch,* for relator.

*Mr. William J. Brown,* attorney general, *Mr. Donald J. Guittar* and *Mr. Perry R. Silverman,* for respondent.

HOLMES, P. J. This matter comes before the court as a complaint in *mandamus* to compel the Ohio Director of Transportation to initiate appropriation proceedings for soil and gravel removed from channel easements conveyed to the state by relator.

The complaint herein relates to construction of the Route 35 bypass of Chillicothe, Ohio, in 1965, by the former depart-

ment of highways. It was determined that an excavation of channels adjacent to the Scioto River was necessary for the bypass project. Accordingly, the state, through the department of highways, began purchasing or appropriating easements along the river early in 1965.

On June 3, 1965, Howard Goldsberry, the relator in this matter, conveyed two easements to the state of Ohio, "***for the construction of a perpetual watercourse, ditch, channel or other drainage facility, in, upon, and over the lands***" owned in fee simple by Judge Goldsberry. Relator specifically retained "***the right to use said lands for any and all purposes provided that such use does not interfere with nor impair the exercise of the easement***." The deeds conveyed easements in approximately 36.5 acres, for which Judge Goldsberry received $27,000 in compensation.

Subsequent to the conveyance of these channel easements, the project's prime contractor began excavation. Soil and gravel were removed from the land subject to the easements in order to widen the river bed and lower the water level. These materials were then transported from the river to the Route 35 right of way, and were used in constructing the highway embankment. Relator claims that the easements conveyed by him did not include rights in the earth excavated therefrom, that he has need of these materials, and that the removal of these materials by the contractor constituted a taking of property by the state without compensation.

It is accepted law that the extent of an easement created by conveyance is fixed by the terms of the grant and the circumstances surrounding the transaction. *Hollosy* v. *Gershkowitz* (1950), 88 Ohio App. 198; *Henson* v. *Stine* (1943), 74 Ohio App. 221. In this case, the deeds grant easements for the construction of a channel. Channel construction, by definition, requires the excavation and removal of earth. The granting of the right to construct the channel thus entails the right to remove the soil incident to construction, unless the grant provides otherwise. Because the grantor did not specifically reserve a right in the soil in this case, it is clear upon the face of the instrument that the intent of the parties, as manifested by the grants, was that the right to the soil was to be vested in the grantee, the state of Ohio.

Relator contends, however, that the clause, "Grantor herein retains the right to use said lands for any and all other purposes provided that such use does not interfere with nor impair the exercise of the easement***" reserves to the grantor the right to use the excavated soil taken from the easement. It is further alleged that the reservation clause is meaningless if it is not given the construction urged upon the court by the relator. This argument is not well taken.

The reasonable interpretation of the grant is that the right to excavate and remove soil as necessary for construction of the channel was conveyed. The reservation clause merely sets forth in general terms the grantor's right to use the property in a manner which is consistent with the easement. Had the state removed soil in addition to that necessary for channel construction, then relator would have a compensable claim. This was neither alleged nor proven. By the express terms of the reservation clause, relator was not entitled to use the land for purposes inconsistent with the grant. Because the grant conveyed the right to remove soil for channel construction, relator was barred by the reservation clause from interfering with the grantee's disposition of the soil. In circumstances such as these, *mandamus* will not lie.

A survey of the law of highway easements supports a finding that there was no uncompensated taking of property in the instant case. When the public acquires a highway easement, it obtains a right of way as well as the powers and privileges incident to construction or maintenance of the right of way. Where removal of earth is necessary for construction of the right of way, the soil removed belongs to the public, that is to say the state or municipality. 3 Nichols on Eminent Domain, Section 10, 212 (rev. 3rd ed. 1978); also *Campbell* v. *Monaco Coal Mining Co.* (1948), 53 Ohio Law Abs. 481. By analogy, when removal of earth is necessary to a channel excavation within an easement granted to the state, the right to the soil is in the state unless the grant specifically provides to the contrary. In the case at bar, there was no reservation by the grantor of any right in the soil. Thus, it would seem that relator has obtained full compensation for the property rights that he conveyed.

The relator has filed his deposition herein as an exhibit in

this original action. The deposition relates to a meeting held on February 17, 1965, between Judge Goldsberry and representatives of the Ohio Department of Highways. The relator's testimony, in the main, is a recounting of what he remembered of the conversation of those in attendance. The import was to the effect that he believed the representatives of the department of highways had told him that he would have the excavated earth for his own use and purpose of filling a number of ponds upon the farm property.

In addition to the deposition, relator offered the transcript of the conversation of such meeting taken by a court reporter provided by the relator. Also, we have before us the depositions of the representatives of the department of highways relating, in essence, to the aforestated meeting.

The testimony of the relator is parol evidence which is offered to explain or vary the terms of the written deed of easement for the subject channel improvement. It is well established law that parol evidence of prior conversations, offered to vary or contradict the terms of a written agreement which are plain and unambiguous on the face of the instrument, is incompetent. *Yoder* v. *Electric Co.* (1974), 39 Ohio App. 2d 113.

Here we find that the terms of the deed of easement are clear that there is no specific reservation to the relator of the rights to any of the excavated earth from the channel improvements. That which was reserved is the continued use of the underlying land, which use would not be inconsistent with the easement granted.

There were depositions submitted herein by the respondent, one of which was by Mr. Leonard Berkley, representing the department of highways at the February 17th meeting. Mr. Berkley testified that at the meeting the relator examined plans for the Route 35 improvement, including the channel excavation. Mr. Berkley pointed out that the relator was told that the soil that would be removed from the channel sites would be disposed of at the contractor's discretion.

Even though the terms of the written instrument could be viewed as being unclear or ambiguous, we would be inclined to conclude that the conference and discussion by and between Judge Goldsberry and the representatives of the highway department would not reasonably have led the

relator to believe that the department would grant the right to the excavated soil to Judge Goldsberry. In any event, as the facts have shown, this meeting took place prior to the actual execution of the deed of easement for the purpose of channel improvements, and there was no such language in the instrument reserving the excavated soil to Judge Goldsberry.

In order to prevail in this original action seeking a writ of *mandamus,* the relator must meet the burden of proving the elements of his case by clear and convincing evidence. Conversely, a writ of *mandamus* must not be granted if the right thereto is not so established, or appears doubtful. Accordingly, the Supreme Court has stated, in *State, ex rel. Harris,* v. *Rhodes* (1978), 54 Ohio St. 2d 41, 42, that:

"In order to be entitled to a writ of mandamus, relator must show (1) that he has a clear legal right to the relief prayed for, (2) that respondents are under a clear legal duty to perform the acts, and (3) that relator has no plain and adequate remedy in the ordinary course of the law."

Here, we hold that the evidence presented by the relator seeking such writ of *mandamus* is neither clear nor convincing, and, therefore, we deny the writ.

REILLY and McCORMAC, JJ., concur.